Good morning, Runners. I'm Frank Cerro, attorney for Appellant Lucho Maricio. I wanted to talk about the preemption issue first. When resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties to a labor contract, that claim must either be treated as a Section 301 claim or dismissed as preempted by federal labor contract law. However, not every dispute concerning employment or implicating a collective bargaining agreement is preempted by Section 301. Preemption should not be lightly inferred. Substantial dependence on a collective bargaining agreement is an inexact concept, turning on the specific facts of each case and the distinction between looking to a collective bargaining agreement or interpreting a collective bargaining agreement is not always clear. Here, the court may eventually look to a collective bargaining agreement or a union constitution or bylaws to look at a description of Lucho Maricio's job duties as financial secretary. But just looking to his job duties does not require any analysis or interpretation of that contract or that constitution or those bylaws. In essence, what the appellees are trying to do is they're trying to take away plaintiff's right to frame his claims and his complaint as he sees. He makes a claim for race and national origin discrimination, for one. And that claim should be treated as a claim that is brought under state law. Excuse me, counsel. Let me back up to a couple of things that are bothering me and I need to get them out of the way so I can concentrate. Sure. The bankruptcy of the local. Could you lay out the time sequence and the effect of the stay, of the automatic stay, and what the status is now of the claim against the local? I wish I knew those details more. I am his third attorney. I believe that when he brought his claim in San Francisco Superior Court, that Local 4 already was in bankruptcy. You can't sue a bankruptcy, can you? Isn't there an automatic stay unless you go to bankruptcy? Well, you can't proceed, I guess. I think you're right about that. I think you're right that you can't actually sue. But, counsel, isn't it true that if the reorganization plan has been approved, then the stay order is no longer in effect? Correct. Correct. That's my understanding. And so at what point in the bankruptcy proceedings was the summary judgment entered? Do you know? Counsel, one of the counsel for one of the appellees at the summary judgment hearing stated that Local 4 was now operating again and was a viable entity. So my understanding just from those comments at the hearing was that they were out of bankruptcy as of the date of the argument on the summary judgment. But now that they're, you know, now that they are a viable entity again, there's no reason that this case shouldn't be sent back to the district court so Mr. Mauricio can proceed against Local 4, because Local 4 never moved for summary judgment. It was error for the court to grant summary judgment on Local 4's favor because they never moved for it. Let me ask you about your first point on appeal, the 56F continuance. Yes. I couldn't see anything in the explanation about why the discovery could not have been done before. So there was a lot of time. Your Honor, I think it could have been done before. Again, you know, I came in as Mr. Mauricio's third attorney. I don't really understand why his first or second attorney did not propound any discovery, but they did. The person whose rights are at stake are Mauricio's, not his third attorney's. Pardon me? The person whose rights are at stake are Mauricio's rights, not his third attorney's rights. I don't actually see why it matters that you're his third attorney, and if there's no excuse for his first and second attorney or for Mauricio himself when he was pro se. Well, for one thing. I don't see why he has a right to a 56F. Let me put it into context of what actually occurred. His case, for whatever reason, because of succession of attorneys withdrawing, was essentially placed on hold. Okay? Stayed? Pardon me? Was it stayed? No, there was just an issue. I don't know what essentially put on hold means, unless it means stayed. Yeah. Essentially put on hold means. You mean nobody was doing anything? Is that what you mean? No. What I mean is that the district court entered, I think, a minute order, and it's in the record, saying that the issue of Local 4's bankruptcy and placing the case into early neutral evaluation is stayed pending some determination of Local 4's bankruptcy. Oh, that's why I asked you if it was stayed. Yes. Okay. So what happened was initial disclosures were not even exchanged until September and October of 2001. Now, that's usually the first, I mean, according to the federal rules, that's the first discovery you can engage in anyway. You're not supposed to propound any interrogatories or schedule anybody's deposition until initial disclosures are made. They were not actually made. Documents were not actually produced as part of the initial disclosures until I looked my other day in my office. September 11th is when the International Union mailed me their documents. I believe that I supplied Mauricio's documents on October 9th, 2001, and then suddenly just about a month or two after that, the appellees moved for summary judgment. So there was no time and there was no chance, really, to propound any discovery before they moved for summary judgment. And given that posture of the case, I think it was an abuse of discretion for the court to not allow some kind of discovery so that Mauricio could back up the statements that all of the appellees were agents and employers of his. Your comment earlier that the magistrate judge entered a summary judgment without a motion by Local 4, is there any reason why the magistrate couldn't enter a summary judgment sua sponte? Well, I don't think there was any basis for his doing so because, well, I think the district court was in error because the district court stated that Local 4 had moved for summary judgment, and I understand that's the basis upon which the district court entered summary judgment in Local 4's favor. But the district court was wrong. They had not moved for summary judgment. And is there any reason to expect that the supporting affidavits and so on, the discovery material that would be urged in support by Local 4, would be any different from what would be urged by the other moving parties? In other words, does Local 4 have a different take on this case from the others? Does Local 4 have a different take on this case? No, I don't think so. I think they're all united. I think they all conspired with each other to get rid of Mr. Mauricio. You have to remember that Mr. Mauricio was elected by the rank and file. He was an elected position. And one of his theories in his complaint is that the white hierarchy of the local, the district council, and the international union did not like to see a Hispanic person in such a high position. And so I would like to come back to that race discrimination argument, because the trend in the law, especially with Cramer, seems to be that preemption is not going to easily be found. And in essence, look at what happens if you find preemption. If you say, just because Mr. Mauricio is a union official, that his claims are, you're going to have to look to or maybe go further and even interpret the union constitution and all of that, to say his claims are preempted, essentially is to say that a union official can just be discriminated against on the basis of his race, and we're going to absolutely insulate union officials from suffering race discrimination. There's no authority for that. I suppose that what the court is thinking when it did this is that you can claim race discrimination in an action under the labor management relations or the... I don't think so. I mean, that's more a contractual claim. That's not a race discrimination claim. For example, the Fair Employment and Housing Act, the act under which Mr. Mauricio brought suit, gives a specific exemption for religious organizations. For example, suppose a Catholic church wants to say that its priests must be Catholic. You can't have any Jewish priests. Well, that's actually written right into the statute, that a religious organization can discriminate on the basis of religion if that's a bona fide occupational qualification. There's nothing in the Fair Employment and Housing Act, there's nothing in the Labor Management Relations Act, that specifically exempts union officials from having to suffer race discrimination. And I think when you go into the details of this case, appellees are arguing you have to interpret all of these union documents to find out what Mauricio did in this case. Well, that's their defense. And I understand the well-pleaded complaint rule. Believe me, I understand all of that. But they are trying to mangle and twist his claim. They're saying, just because one of our defenses is we have a legitimate business reason for terminating him, and in doing so we're going to have to look to his job description as a financial secretary, and look to the Constitution and the bylaws for the procedure for removing a union officer. To that I say, that's fine. You can look to those provisions. We can see what his job description is. We can see that they supposedly followed the procedure for terminating him. But that still does not obliterate his race discrimination claim, because that is his primary claim. It looked to me as though you didn't submit evidence of racial discrimination, so you really need the 56-F. And when I look at the 56-F declaration, I just dug it out, it says plaintiff needs to conduct discovery on the following issues. And then it lists a whole bunch of issues. But then it doesn't say why additional time is needed and the discovery could not have been done before. You've just given us some reasons in oral argument why it could not have been done before and additional time was needed, and I don't see them in the declaration. How is the district judge? We're supposed to review for abuse of discretion. What I always do, what I understand my duty is to do in that kind of review, is to look at what the district judge had before him and see whether his judgment was within the bounds of discretion based on what he had before him. And I look at what he had before him, and it's a case with an old file number on it and no reason why nothing has been done before. Your Honor, what the district judge had before him, and I understand the district judge is impatient with this case. Well, I'm not talking impatience. Ordinarily, a district judge wouldn't reread the whole file that he hasn't looked at for quite some time. Why does this person want a 56F? I'll read the declaration to see. And he reads the declaration, and there's no good reason. Your Honor, it's a little bit more than that. Mr. Mauricio asked the court for time to find a third attorney. Judge Larson basically told Mr. Mauricio, if you don't find a new attorney within the next month or two, I'm going to dismiss your case. So I actually wrote a letter to Judge Larson asking him, please give Mr. Mauricio more time. It's going to take me a couple of weeks to review all his documents. I don't think he understood what I just meant. When a judge is ruling on a motion, there's ordinarily no occasion for him to reread the whole file that preceded the motion. Mauricio is not a big part of this district judge's life. He probably doesn't remember the name today. And he's going to read the motion and see what the reasons are. Your Honor, believe me, I know what you're saying. You're saying, look at just my declaration that was in front of the judge. And I'm saying, please go beyond that. This judge was well aware of Mr. Mauricio. When I finally came into the courtroom to be his attorney, the judge looked up and said, very good to see you, Mr. Saro. I'm so glad that Mr. Mauricio is finally going to get an attorney in this case. So I think that Judge Larson was well aware of Mr. Mauricio's problems with attorneys, and he knew that the case was essentially on hold, and he knew that there was no discovery in this case. The initial disclosures producing documents had not even taken place. They only took place after I became his attorney. So I think the judge was well aware. The reason that he needed some time for discovery was because no discovery yet had been done. I think I've exceeded my time. Thank you, counsel. Thank you. Please record David Rosenfeld on behalf of District Counsel 16, the International Union, and the two international officers. Let me just deal with the status of Local 4. Local 4 had filed a Chapter 11 prior to the commencement of this lawsuit. It was in Chapter 11 proceedings. A plan of arrangement was confirmed in the spring, about the time that Judge Larson heard the summary judgment motion, and counsel from the international, Mr. Kolick, represented to Judge Larson that the plan had been confirmed and that Local 4 was out of bankruptcy at that time. I believe that to be correct, although we didn't represent Local 4 in the bankruptcy. I think by the time Judge Larson heard this, their plan had been confirmed and they were out of bankruptcy, and they're out of bankruptcy today. However, subsequent to these events, the international union put Local 4 in trusteeship because, in part, of the financial problems that are reflected in this case. Let me just, first of all, Mr. Sarrell's suggestion that there was some stay from the district court in this matter. He refers to some minute orders. What exactly happened, and this is reflected at the excerpt of record at page 68, is that the court entered an order requiring initial disclosures to be made. This is February of 2001, a year before the summary judgment was granted. And the court's order said initial disclosures to be completed within 30 days, which we, the defendants, did. Plaintiffs didn't do that. Plaintiffs to decide by March 2. Hold on. You said ER 68, not supplemental ER 68? No, this is ER 68. This is the? The docket sheet. Docket sheet. And that's number 42. And plaintiffs to decide by March 2001 whether he wishes to proceed, and if so, motions to determine the effect of Local 4 bankruptcy to be filed. There's no stay by that minute order. And then there's another minute order on the next page on April 5, 2001, in which number 47, Magistrate Judge Larson vacated the previous order briefing on the bankruptcy issue and took the E&E off calendar until plaintiffs obtained new counsel. There was never a stay of any kind in this case. The magistrate judge took motions off calendar, took the E&E off calendar, because there was no lawyer at that time. And let me just respond to this 50 success issue. You're saying the case wasn't stayed. It's just I never heard the term early neutral evaluation. It sounds like some kind of settlement conference. Is that what it means? The northern district has this E&E program, which is sort of a voluntary mandatory settlement process where it's referred to another. The E&E process is a situation where it's kind of a settlement conference. Right. And so what this order means is I'm taking the settlement conference off the calendar. Because the plaintiff no longer had a lawyer to participate in it. I don't care about the because right now, just what happened. We're not going to have a settlement conference. Yes. But it doesn't say the case is stayed. It does not. It did not. Okay. So the case was never at any point stayed. When Mr. Saro got into the case in August of 2001, that's when he first entered and first represented Mr. Mauricio, that was some five months before these motions were heard by Judge Larson. And then when Mr. Saro filed his response to the motions for summary judgment, and this is an excerpt of record, page 21, and this was filed in December of 2001, he said at that page at the beginning of line five, for purposes only of opposing defendant's motions, plaintiff does not dispute any of the supposedly undisputed facts advanced by defendants. It's right there at the top. And then he goes on to say, however, there's no discovery other than initial disclosures. The court may wish to grant plaintiff additional time to conduct discovery under 56F. Now, that's certainly not the way you trigger a 56F application, but he tells the district court, the magistrate judge, that he's not disputing any of the facts that have been presented by the defendants in support of the motions. It's only the day before the hearing, the court day before the hearing, that he files his 56F affidavit in which he focuses only on one issue. The issue is the so-called Kaplan factors about whether the international union or the district council somehow is responsible for what Local 4 was doing. And there are two problems with that. One, Kaplan wasn't law at that time. It had been, in effect, overruled by the later Lawhorn case. And number two, the only thing he asked for discovery on, if you read the 56F affidavit, was this employment relationship. And certainly the district court was well within its discretion to say, look, this case had been going on for two years, which it had at that time, and Mr. Mauricio at least ought to have some facts about who his employer was, some facts about the involvement of these other parties in the employment relationship. He could have presented some facts at that time if he had them. If I see the effect of this 56F, the only thing that the district court ruled in summary judgment on for lack of evidence was evidence that the two remaining defendants were his employer. Correct. Which are two? What two were left at that point? Was it the district council and the? There were only two entities. There were three entities in the case. Local four, subject to bankruptcy stay, the automatic stay. And then the two other entities were district council 16, which was the successor to district council eight. Okay. Eight had merged into 16, and 16 assumed its responsibilities. And then above that is the international. The international. Okay. So the 56F ruling really doesn't have anything to do with the rulings that his race claims, his FEHA claim are preempted. No, because he didn't ask for any discovery on his race claim or his California wrongful termination claim. But we can't. In other words, what I'm asking is, what would happen if we disagreed with you to some extent or disagreed with the magistrate judge on preemption of some of these claims? What's left? Let's say we decided that the defamation claim isn't preempted. If you decided that the defamation claim was improperly dismissed, the summary judgment, and remanded it back for processing of that, then you have the question of who the parties are at that point, because the defamation claim. Well, yeah, I probably shouldn't have selected that one. I mean, the defamation claim alleges only three individuals, none of whom were ever served or party to the litigation. Well, then we've got the race discrimination claim. Well, if we focus on the race, presumably against Local 4, I suppose. Right. And obviously, you know, although we don't represent Local 4, the international district council would prefer not to see it remanded. The magistrate judge, I think, plainly solved this as an issue of jurisdiction. That is, if the race discrimination claim is preempted as to the international and all the other defendants, it's certainly preempted as to Local 4, and the magistrate judge recognized the court didn't have jurisdiction as to any party over that claim. So it was proper for him to grant it suitably. Why couldn't he bring the federal claim that was doing the preempting? Pardon, Your Honor? You're saying if those claims are preempted, they're preempted by some federal law. Right. And presumably some sort of an action can be maintained within the jurisdiction of the court under those claims, or does it have to go to a board or something? Well, in light of the argument in the prior case, I'll respond as follows. Yeah, I mean, that's what – I guess maybe that's why they grouped these two cases on the same day. I suppose that what Mr. Sarrell could have done is say to the judge, in light of these preemption arguments, there is a federal claim we could make, for example, a claim that – and, in fact, when you read the complaint, that's really what he's alleging. And he could have said, well, Your Honor, to the magistrate judge, we think we could amend the complaint to allege a federal claim, which is a violation of Section 301, that is that the unions breached their constitutions and how they terminated me. And that would have, you know, avoided the jurisdictional problem. That is, I concede that one can't – and this, of course, is our preemption argument – that someone like Mr. Mauricio can allege that a union removes him from office in violation of its constitution. That is, removes him improperly by not giving him the procedures he's entitled to. And that's something a federal court has jurisdiction over under Section 301. Just as he might have jurisdiction – the court would have jurisdiction under Landrum-Griffin on that same claim. The problem is that they never asked the magistrate judge to allow him to amend the complaint to somehow state a claim under Section 301. And by the time he filed his lawsuit, it probably would have been barred by the statute of limitations anyway. So either of those claims would have a six-month – I want to be careful here. I want to be careful here. As to the Landrum-Griffin claim, that's probably a year. All right. So he might have been able to do that, that is, to relate it back, had he said to the magistrate judge, I now want to pursue a Landrum-Griffin claim. Okay. And I don't want to go too far in terms of the 301 claim for breach of the Constitution, because, for example, he – sort of a question of when he exhausted his remedies, he might have been able to escape that. But he didn't ask the – he didn't say, I want to now amend my complaint. Give me leave to amend to state all these other federal claims. I suppose when I start thinking about union officers, you know, I'm pushed into Landrum-Griffin kind of normally. Well, can I push back the other way for the moment, okay? Our primary argument in this case is, in terms of preemption, is that what the Audet case says and what the Humble case now say is that once you're required to interpret the terms of the union constitution, which is a contract within the meaning of section 301, that claim is preempted. Now, what Mr. Cerro is arguing is that that's our defense. That is, we can't trigger preemption simply by saying the interpretation of the Constitution is required. But we don't need to do that. I mean, what Audet says is that once it becomes plain from what the case is about, that interpretation of either the collective bargain agreement, which is a 301 agreement, or the union's constitution, which is a 301 agreement, is part of the case, becomes an ingredient of the case, then it is preempted because the court is required to interpret either the collective bargain agreement or the Constitution. Can we properly avoid reaching the preemption issue by limiting our decision to the issues that were both raised in the opposition to summary judgment and preserved in the brief on appeal? Most of the issues, the problems I think he did raise, he certainly raised the preemption argument by citing a couple of cases on that point. So I think that in terms of the 301 preemption, that was preserved by his opposition. The problem is you can avoid that all by saying that one of the arguments we raised in the district court was that his claim was barred by LMRDA Landry Griffin preemption. He never responded in the district court to that and therefore waived that in terms of that argument. One of his other arguments here is that somehow this is criminal conduct, the whole Bloom kind of case. He didn't raise that in the district court either. He didn't oppose the motion asserting somehow that it's like Bloom and therefore that's certainly not here either. But what I think is certainly here because he certainly raised it was the 301 preemption issue as to ‑‑ he didn't do it very well. I mean, all he said was that 301 preemption is invoked for a collective bargain agreement, but our argument was there was 301 preemption both as to the union constitution as well as there was 301 preemption under collective bargain agreements because when you read the complaint, if I can focus on this for a moment, this isn't a case ‑‑ let me step back. He could have, I think, done the following, alleged that he was terminated solely because he was Hispanic, period, end of case, asserted jurisdiction, and then we would have had a tough time at least on a 12b6 motion arguing preemption. But he did the reverse, that is the First Amendment complaint goes on at length to argue about how the defendants violated the union constitution by filing meritless charges, improperly removing him from office because of the way he performed his duty. He alleges he performed his duties as financial secretary competently and then he goes on to say that there was disorganization and disarray within the local. He says that he was accused of violating regulations of the IBPAT, it's all an excerpt of record six. So the complaint is rife with these allegations that the defendants used the internal constitution and abused it, interpreted it incorrectly to remove him. Counsel, in terms of procedure, your motion was brought as a 12b6, but the court, in fact, converted it to a summary judgment. Is that correct? I thought it was brought as a summary judgment. No, but it was brought as a summary judgment because there were plenty of affidavits attached to it. Oh, I thought it was brought as a, okay. And certainly, Mr. Sheriff. That's why the court converted it, because there were affidavits. I don't have the. Do you have a citation to the record where it was brought as a summary judgment? I thought it was a motion to dismiss originally. I can check. Because the court filed an order granting the motion to dismiss in April. The order granting summary judgment recites that it was, that motions were brought for judgment on the pleadings or summary judgment. Okay. So it might have been an alternative. That would be, yeah, that's docket entry 58 on page 70 of the excerpt of record. I was just looking at excerpt to record 149 where it said order granting defendants motion to dismiss, and I wasn't sure what the procedural posture was. It was definitely a motion for summary judgment. We did not have in the excerpt the notice of motion and motion. We have the memorandum, but docket entry 58 clearly reflects that it was, quote, for summary judgment, for partial summary judgment. Yes, the docket is just a little confusing because the court referred to it as a motion to dismiss in 149. Well, I think we've all seen plenty of courts that have entered judgments by dismissing cases, thinking that was the way to end them, but it was not a 12B6. All right. Thank you. I notice my time is up. If there are more questions, I'm happy to address them. Obviously, it was a little difficult for us because there was no reply brief filed to know what would be issued. Thank you, counsel. Thank you. Mauricio v. International is submitted.
judges: Canby, Kleinfeld, Rawlinson